IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 3, 2023

## JOHN SCHMEECKLE v. HAMILTON COUNTY, TN. ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 23-0403  Pamela A. Fleenor, Chancellor**
———————————————————

**No. E2023-01533-COA-T10B-CV**
———————————————————

Appellant appeals the denial of his motion to recuse the trial judge on the grounds that the trial judge refused to explain the reasons other judges recused from the case, refused to hear evidence of misconduct against an attorney involved in the case, and allegedly ruled erroneously in several respects. Because we conclude that an ordinary person knowing all the facts known to the judge would not question the judge's impartiality, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JEFFREY USMAN, J., joined.

John Schmeeckle, Chattanooga, Tennessee, Pro se.

Sharon McMullan Milling, Chattanooga, Tennessee, for the appellees, Hamilton County, Tennessee, Austin L Garrett, and Ron Rice.

## OPINION

### I.

Because of the limited record presented in this appeal, we take the facts and procedural history from the pleadings and orders submitted to us. It appears that this is the third iteration of this case, which began as an eviction against Plaintiff/Appellant John Schmeeckle ("Appellant") in Hamilton County General Sessions Court. From what we can discern from the record, that case resulted in Appellant's eviction from the property. Next, Appellant filed an action in Hamilton County Circuit Court alleging misdeeds by the property manager of the property from which Appellant had been evicted; that case was

eventually dismissed. In September 2022, Appellant initiated this case in Hamilton County Circuit Court; the case was originally assigned to Judge J.B. Bennett. In January 2023, Appellant filed an amended complaint, naming Defendants/Appellees Hamilton County, Tennessee, Sheriff Austin Garrett, Sergeant Greg Carson, and Sergeant Ron Rice (together, "Appellees"). The amended complaint alleged that Appellees, along with "county employees and one judge," impeded Appellant's efforts to fight an unlawful eviction, resulting in property damage and emotional harm. Among other things, Appellant asked the circuit court to direct Sheriff Garrett to take various actions, including striking a criminal trespass warning that Appellant received and beginning an investigation into various county employees to, inter alia, determine whether there is probable cause to indict them for various crimes. The only monetary relief that Appellant specified was for the reimbursement of court costs related to the action.

In May 2023, Judge Bennett recused himself without giving a detailed explanation for the action. According to Appellant, a number of other judges then also recused, again without providing detailed explanations. The matter was eventually transferred and assigned to Chancellor Pamela A. Fleenor ("the trial judge") in the Hamilton County Chancery Court ("the trial court") on May 18, 2023. On May 30, 2023, Appellees filed a motion to stay discovery, indicating that they intended to file a motion for judgment on the pleadings.

Relevant to this appeal, on September 6, 2023, Appellant filed a pleading asking for an explanation as to why the prior judges had recused. In that pleading, Appellant alleged that counsel for Appellees, Attorney Sharon Milling, violated the Rules of the Tennessee Supreme Court and criminal statutes in delaying responding to discovery. Appellees responded in opposition on September 8, 2023, noting that they had requested a stay on discovery. During the course of the trial court matter, the parties filed numerous additional motions. As such, the following motions were heard on September 18, 2023: (1) Appellees' motion to dismiss the original complaint; (2) Appellant's notice of error indicating that a motion had been filed in the wrong case; (3) Appellant's motion to amend the complaint; (4) Appellant's motion for a ruling on whether the lawfulness of the eviction was previously adjudicated; (5) Appellant's motion to expunge the order granting Appellees an extension of time to respond to discovery; (6) Appellees' motion for judgment on the pleadings; (7) Appellant's motion for the release of Sergeant Carson's personnel file; (8) Appellant's motion for additional discovery; and (9) Appellees' motion to stay discovery.

During the hearing, Appellant attempted to raise the issue of the prior recusal, which Appellant argued "potentially involves the issue of your [i.e., the trial judge's] recusal." As Appellant explained, "I simply do not know what is behind what brought this case here. And I request that the issues in my request be addressed before the motions." The trial court responded as follows:

[A]ll I have to tell you is, I do not know either. And that is not something

that -- the Supreme Court rules do not require a judge to . . . explain why a judge recuses. A judge simply can recuse. And there's no explanation. So, I don't know either. And that's not something either you or me is entitled to.

Appellant then attempted to raise the alleged "unethical behavior and criminal wrongdoing by Assistant County Attorney Sharon Milling." The trial judge responded that she did not have that motion in front of her, but Appellant explained that it was part of his request for an explanation "regarding the removal of this case from circuit court to chancery court." The following colloquy then occurred:

[The trial judge]: Okay. I can't address that, so you'll have to go on to the other ones. That's all I -- I don't know. That's not something in front of me. I can only give relief in my case. That's the best way I know how to explain -- draw a picture for you.

But you're -- go ahead and argue your other motions that are in front of me.

\*   \*   \*

[Appellant]: Your Honor, may I ask to clarify?

[The trial judge]: Yes, sir.

[Appellant]: If the -- you are not allowing me to provide information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct.

[The trial judge]: That would not -- all right. Let me step back and tell you about that. There is a Board of Professional Responsibility that governs lawyers. Judges don't. I have no -- that's not something that's in front of me either. There's a Board of Judicial Conduct that governs judges. I have nothing to do with that either.

I have this case in front of me that you filed against Hamilton County, Sheriff Austin and two deputies, and I can hear that. Anything against a judge or a lawyer is not in front of me. That's all I know. I don't know how to explain it any other way. There's other avenues to address those issues.

[Appellant]: Your Honor, the Tennessee Supreme Court's Code of Judicial Conduct, Section 2.15, states: "A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action."

[The trial judge]: Right. And I have none of that. She just now showed up today on this case. So far she hasn't done anything. You need to move on. I don't have anything about Ms. Milling in front of me. Sir, do you want to argue any of these motions, or do you want me just to let her address your motions?

[Appellant]: Your Honor, it --

[The trial judge]: You're going to have to move on to your other motions. I am not addressing that. It's not in front of me. I'm giving you a

chance to address what's in front of me. Are you declining that?

    [Appellant]: Your Honor, I move that you recuse yourself.

    [The trial judge]: Okay. Denied. Move on. It's an oral motion. Do you want to do these motions or not? That's not a proper way to recuse. All right. Ms. Milling, I'll let you respond, because he's not arguing.

    [Appellant]: I am trying to gather my wits, Your Honor.

    [The trial judge]: Oh, you do want to argue them now?

    [Appellant]: I, I, I move that you recuse yourself --

    [The trial judge]: That's not a proper way to file a motion. So, it's denied. . . . You may argue your motions that are in front of me, sir. We have this list of motions. I'm ready to hear from you. . . . But you're bringing up things that are not in front of me.

    [Appellant]: The unethical behavior is in the documentation of the motions.

    [The trial judge]: All right. It's denied. Now, move on to the next one.

The parties thereafter proceeded to discuss the above listed motions.

In a September 20, 2023 order, the trial court: (1) denied the motion to dismiss the original complaint, as the motion was rendered moot by the filing of the amended complaint; (2) acknowledged the notice of error, but took no action as the matter involved the prior circuit court action; (3) struck Appellant's motion to amend the complaint as that motion was voluntarily stricken by Appellant; (4) ruled that the lawfulness of the eviction was adjudicated in the circuit court action and therefore res judicata; (5) denied Appellant's motion to expunge the order relating to an extension on the time to respond to discovery; (6) granted Appellees' motion for judgment on the pleadings; and (7) denied the motion for additional discovery, the motion for review of the personnel file, and the motion for a stay on discovery, deeming all three requests as moot.

Later in the afternoon on September 20, 2023, Appellant filed a formal motion to recuse the trial judge. The motion stated that it was not being presented for an improper purpose. Moreover, in his notarized motion, Appellant declared "under penalty of perjury that all of the foregoing is true and correct, to the best of my knowledge."

The trial court entered a written order denying Appellant's motion to recuse on September 22, 2023. Therein, the trial court characterized Appellant's arguments as two-fold: (1) relating to the trial judge's refusal to explain why the prior judges recused; and (2) relating to the trial judge's refusal to hear Appellant's proof concerning the alleged misconduct of Attorney Milling. As to the first ground, the trial court once again explained that Rule 10B of the Rules of the Tennessee Supreme Court does not require a judge who recuses from a case to explain the reasoning behind that decision. As to the second ground, the trial court explained as follows:

[Appellant] argued at the hearing, as he does in this motion, that the Chancellor should report Attorney Milling's criminal acts to the Board of Professional Responsibility. At the hearing the Court denied [Appellant's] request and advised [Appellant] that the Court found no fault or misconduct by Ms. Milling in this case. Thus, [Appellant] moves for recusal based on that adverse ruling by the Court.

However, the mere fact that a judge has ruled adversely to a party is not grounds for recusal. *Adams v. Dunavant*, [674 S.W.3d 871 (Tenn. 2023) (per curiam)]. In fact, rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more justify disqualification. *Id.* Therefore, [Appellant] likewise has failed to meet his burden for recusal on this ground as well.

Further, this Court was assigned this case for adjudication. Tenn. Sup. Ct. R. 10 Canon 2 Rule 2.7 provides "a judge shall hear and decide matters assigned to the judge, except when disqualification is required by RJC 2.11 or other law." A judge should not decide to recuse unless a recusal is truly called for. *Metzger v. Metzger*, E2018-00035-COA-T10B-CV, 2018 WL 522414 *4 (January 23, 2018). This is true because a judge has as much of a duty <u>not</u> to recuse herself, absent a factual basis for so doing, as she has to step aside when recusal is warranted. *Id.*

Appellant thereafter filed a motion to alter or amend the denial of his motion to recuse, providing more details of the trial judge's rulings. The trial judge denied the recusal motion to alter or amend as repetitive under Rule 10B, section 1.03, by order of October 6, 2023. This accelerated interlocutory appeal followed.

In the meantime, proceedings ostensibly continued in the trial court. On or about October 23, 2023, Appellant filed a motion to alter or amend the September 20, 2023 order effectively dismissing Appellant's amended complaint. On November 6, 2023, Appellees responded in opposition to Appellant's motion to alter or amend the September 20, 2023 order, except that they agreed that their motion for judgment on the pleadings was deficient. Appellees therefore agreed that the dismissal of the action should be set aside so that they could file a non-deficient motion; Appellees asserted, however, that a stay on discovery should be granted because of the anticipated re-filing of the motion for judgment on the pleadings and that the other rulings contained in the September 20, 2023 order should not be disturbed. It is not clear from the record on appeal whether the pending motion to alter or amend has been adjudicated.

## II.

Under section 2.01 of Rule 10B of the Tennessee Supreme Court, a party is entitled to "an accelerated interlocutory appeal as of right" of an order denying a motion to recuse. The party effects an accelerated appeal by filing a petition for recusal appeal with this

Court, accompanied by "a copy of the motion and all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of any other parts of the trial court record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, § 2.03. "If the appellate court, based upon its review of the petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal." Tenn. Sup. Ct. R. 10B, § 2.05. In this case, we have determined that no answer from Appellees is necessary and we choose to act summarily on this appeal. *See also* Tenn. Sup. Ct. R. 10B, § 2.06 (stating that a 10B accelerated appeal should be decided on an expedited basis). In this appeal, the sole issue is whether the trial court erred in denying Appellant's motion to recuse. *See, e.g.*, **Mani Assocs. v. Appalachian Underwriters Inc.**, No. E2023-00382-COA-T10B-CV, 2023 WL 2784609, at *2 (Tenn. Ct. App. Apr. 5, 2023); **Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.**, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015); **Elseroad v. Cook**, 553 S.W.3d 460, 462 (Tenn. Ct. App. 2018); **Watson v. City of Jackson**, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014).

## III.

As the Tennessee Supreme Court recently explained regarding recusal:

"Tennessee litigants are entitled to have cases resolved by fair and impartial judges." **Cook v. State**, 606 S.W.3d 247, 253 (Tenn. 2020) (citing **Davis** [**v. Liberty Mut. Ins.**], 38 S.W.3d [560,] 564 [(Tenn. 2001)]); *see also* **State v. Griffin**, 610 S.W.3d 752, 757–58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. **Cook**, 606 S.W.3d at 253; **Kinard v. Kinard**, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.

To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).

Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." **Cook**, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to

the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564–65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

*Adams v. Dunavant*, 674 S.W.3d 871, 878–79 (Tenn. 2023) (per curiam).

The source of the alleged bias alters the burden that the party seeking recusal must bear. If the alleged bias originates during the course of the proceedings, "the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014)). This Court has described a "pervasive" bias as one that "reflect[s] an utter incapacity to be fair." *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016). "Judicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." *Id.* (citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

In his filings to this Court, Appellant takes both positions on this issue. First, he does not appear to dispute that the allegations of bias against the trial judge originated during the course of these proceedings. Rather, he argues that the trial judge's bias is so pervasive as to be an exception to the rule that a bias must stem from an extrajudicial source.[1] Appellant goes on, however, to argue that circumstantial evidence exists to show that the trial judge's "bias against Appellant stems from an extrajudicial source[,]" citing the fact that the trial judge's orders "are cut from the same cloth" as the orders of the prior judges against him. However, "[a] claim of bias or prejudice must be based on facts, not

---

[1] Specifically, in an addendum to his petition for recusal appeal, Appellant states that "egregious misconduct by a judge as that judge rules provides an exception to the stricture that a litigant moving for recusal must show that a judge's prejudice against that litigant stems from an extrajudicial source."

speculation or innuendo[.]" **Runyon**, 2014 WL 1285729, at *9. Appellant must therefore "come forward with some *evidence* that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." **Eldridge v. Eldridge**, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002) (emphasis added) (quoting **Davis**, 23 S.W.3d at 313). Respectfully, Appellant has cited no evidence to demonstrate that the trial judge's alleged bias stems from an extrajudicial source. Instead, his allegations of an extrajudicial bias are "based more on insinuation and speculation than on actual facts." **Simonetti v. McCormick**, No. M2022-01669-COA-T10B-CV, 2023 WL 1978257, at *6 (Tenn. Ct. App. Feb. 14, 2023) (quoting **Runyon**, 2014 WL 1285729, at *9). After a careful review of Appellant's motion to recuse and the supporting documents contained in the record, we cannot conclude that the trial judge has any knowledge of this case from any source other than presiding over the case in the chancery court. Thus, Appellant maintains the burden to show that recusal is warranted under the higher standard noted above, and we review the trial judge's denial of Appellant's recusal motions de novo with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01.

On appeal, Appellant agrees that his "initial reasons" for moving for recusal of the trial judge related to her refusal to explain the basis for the prior recusals,[2] as well as her refusal to hear evidence of Attorney Milling's alleged misconduct. He further asserts that recusal is necessary due to the multiple alleged factual and legal errors that the trial judge made in her rulings, which he detailed more fully in his motion to alter or amend the order denying his motion to recuse. We will consider each of these grounds for recusal in turn.

As an initial matter, Rule 10B specifically states that the judge is required to state in writing his or her grounds for denying a motion to recuse, but only "[i]f the motion is denied." Tenn. Sup. Ct. R. 10B, § 1.03. Nothing in Rule 10B states that the judge shall also state his or her ground for granting a motion to recuse. Moreover, the trial judge explained to Appellant at the September 18, 2023 hearing that she did not know why the prior judges recused. Again, the standard for recusal requires that we consider the facts "known to the judge[.]" **Cook**, 606 S.W.3d at 255 (quoting **Davis**, 38 S.W.3d at 564–65). The trial judge's refusal to provide insight into another court's reasoning simply does not indicate an actual bias or an appearance of impropriety.

Appellant also asserts that given that so many prior judges allegedly recused from this case without explanation, a litigant could "reasonably conclude that any additional judge or chancellor in the same county would have the same ground for recusal," leading the litigant to reasonably question the impartiality of the remaining judge. This allegation is nothing more than speculation and innuendo both as to the reasons why the prior judges

---

[2] Although Appellant repeatedly states that more than one judge recused from this matter, he has not submitted to this Court any orders of recusal from any of the prior judges. The trial judge, in her September 20, 2023 order, did note the recusal of one prior judge. However, in Appellees' motion to alter or amend, which was filed as an addendum to Appellant's petition for recusal appeal, Appellees concede that "each of the Circuit Court Judges recused themselves from hearing this matter."

recused and that the current judge shares whatever concerns the prior judges possessed. And we have previously held that recusal was not required based on "assumptions and innuendo that the conflict that required recusal in the separate case was also present in this case." ***In re Conservatorship of Osborn***, No. M2020-01447-COA-R3-CV, 2021 WL 5144547, at *9 n.9 (Tenn. Ct. App. Nov. 5, 2021). Similarly, in this case, the trial judge is not required to recuse simply because of an assumption that she may share whatever conflict required the prior judges presiding over this case to recuse, in the absence of any evidence to support that assumption. As such, the first ground for recusal was properly denied by the trial court.

Next, Appellant contends that recusal is warranted because the trial court refused to hear evidence of misconduct by Attorney Milling and made "multiple errors of fact and law" in the September 20, 2023 order on the pending motions and the order denying Appellant's motion to alter or amend the order denying recusal. It appears that Appellant takes particular issue with the trial court's denial of Appellant's motion to expunge the order giving Appellees additional time to respond to discovery. These alleged errors, Appellant contends, create the appearance that the trial judge is biased against him.

In support of this argument, Appellant spends considerable time discussing what rules and statutes he asserts that Attorney Milling violated, including Rule of Professional Conduct Rule 8.4(b),[3] Tennessee Code Annotated section 39-16-402,[4] and Tennessee Code Annotated section 39-16-403.[5] Thus, Appellant alleges that Attorney Milling had committed crimes against him and that her criminal activity constituted professional misconduct that the trial judge was then obligated to report to the Tennessee Board of Professional Responsibility ("the Board of Professional Responsibility"). *See* Tenn. Sup. Ct. R. 10, RJC 2.15(B) ("A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority.") And Appellant contends that in blocking him from presenting evidence of this misconduct at the September 18, 2023 hearing, an appearance of bias was created that requires the trial judge's recusal.

---

[3] This rule states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" Tenn. R. Sup. Ct. 8, RPC 8.4.

[4] This statute provides that it is a criminal offense for a public servant to, "with intent to obtain a benefit or to harm another, intentionally or knowingly[,] . . . [r]efrain[] from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment[.]" Tenn. Code Ann. § 39-16-402(a)(3).

[5] This statute provides that "[a] public servant acting under color of office or employment commits an offense" by "[i]ntentionally den[ying] or imped[ing] another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful." Tenn. Code Ann. § 39-16-403(a)(2).

Respectfully, we disagree. Here, when Appellant attempted to raise the issue of Attorney Milling's alleged misconduct, the trial judge ruled that the issue was not properly before her. When Appellant insisted on discussing the allegations of misconduct, the trial court ruled that there had been nothing in the case so far that supported a finding of misconduct on the part of Attorney Milling. Whether the trial court erred in its ruling is not before this Court; we are only concerned with whether the trial judge should have recused from this matter. *See Watson*, 448 S.W.3d at 927. And Tennessee law is clear that "the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Davis*, 38 S.W.3d at 565 (citing *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995)).

Moreover, nothing in the papers filed in support of this accelerated appeal indicate that a motion had been filed for discovery or Rule 11 sanctions against Appellees or Attorney Milling. *See generally* Tenn. R. Civ. P. 37.01–.02 (providing for discovery sanctions); Tenn. R. Civ. P. 11.03 (providing for sanctions against an attorney who violates Rule 11.02, which requires nonfrivolous arguments). *But see* Tenn. R. Civ. P. 11.04 (stating that Rule 11 sanctions are not applicable to discovery violations). Moreover, to the extent that Appellant was asserting that Attorney Milling committed criminal acts, the chancery court had no jurisdiction over criminal prosecutions. *See* Tenn. Code Ann. § 16-10-102 ("The circuit court has exclusive original jurisdiction of all crimes and misdemeanors, either at common law or by statute, unless otherwise expressly provided by statute or this code."); Tenn. Code Ann. § 40-1-108 ("The circuit and criminal courts have original jurisdiction of all criminal matters not exclusively conferred by law on some other tribunal."). And in declining to hear Appellant's evidence regarding professional misconduct, the trial judge directed Appellant to a proper forum for those allegations, the Board of Professional Responsibility. Appellant has cited no law that mandates that a trial court must serve as a conduit for a litigant to make allegations against an attorney for professional misconduct when that issue is not presently before the court pursuant to a pending motion for sanctions or other relief, in an apparent effort to force the trial judge to make a complaint against the attorney; as the trial court stated, if Appellant believed that professional misconduct occurred, he was free to raise those allegations to the Board of Professional Responsibility himself. Under these circumstances, we cannot conclude that these facts would lead an ordinary person to question the trial judge's impartiality.

Finally, in addition to the adverse ruling concerning whether Attorney Milling committed misconduct, Appellant also discusses what he alleges were multiple errors in the September 20, 2023 order, including, but not limited to: (1) a mischaracterization of the prior case originating in general sessions court; (2) the failure to note the recusal of three additional judges before the case was transferred to the trial judge; (3) a mischaracterization of Judge Bennett's actions prior to his recusal; (4) a misstatement as to the caselaw on an issue relevant to Appellees' motion for judgment on the pleadings; and (5) a mischaracterization of Appellant's request for a copy of Sergeant Carson's personnel file. According to Appellant, these errors also give the appearance that the trial

judge committed "the crimes of both Official Misconduct (T.C.A. 39-16-402) and Official Oppression (T.C.A. 39-16-403), as well as committing a Federal crime[]." In other words, Appellant asserts that these errors indicate "a bias against appellant so extreme as to motivate criminal behavior[.]"

Again, the only question in this case is whether recusal was mandated, i.e., whether "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Cook*, 606 S.W.3d at 255 (quoting *Davis*, 38 S.W.3d at 564–65). In this appeal, Appellant essentially argues that the trial judge's bias against him is evident from the numerous findings and rulings that are either legally or factually inaccurate. But "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley*, 882 S.W.2d at 821. Nor do they generally suffice to demonstrate a bias or prejudice so pervasive as to deny a litigant a fair trial. *Clemmons v. Nesmith*, No. M2016-01971-COA-T10B-CV, 2017 WL 480705, at *12 (Tenn. Ct. App. Feb. 6, 2017) ("Appellants have cited no law, nor has our research revealed any, in which adverse rulings, even if numerous and erroneous, were held to evidence a bias or prejudice so pervasive as to deny a litigant a fair trial.").

As a result, this Court has held that the fact that a trial judge has ruled against a party numerous times, "even if erroneously, is not sufficient on its own to show an appearance of bias or prejudice requiring recusal." *Id.* Instead, "[a] recusal motion is simply 'not the appropriate means' to challenge a trial court's ruling based upon 'its interpretation of the facts and the law.'" *Id.* (quoting *State v. Lowe*, No. M2013-00447-CCA-10B-CD, 2013 WL 706318, at *3–4 (Tenn. Crim. App. Feb. 26, 2013) ("The Appellant will have the opportunity to appeal the [adverse] ruling . . . on direct appeal, if necessary.")). Rather, in *Clemmons* we advised the appellant to raise the underlying legal questions, many of which focused similarly on discovery, "in an appeal from the trial court's final judgment or in a properly perfected interlocutory or extraordinary appeal pursuant to the Tennessee Rules of Appellate Procedure." *Id.*

The same is true in this case. Here, Appellant has not provided any evidence that the trial judge holds a bias against him, much less that any alleged bias stems from extrajudicial sources. While the trial court may have erred in its legal rulings against Appellant,[6] these rulings, even if erroneous, neither rise to the level of egregious conduct alleged by Appellant, nor are they sufficient to show a bias so pervasive that it denied Appellant a fair trial. *Cf.* Deborah Goldberg et. al., *The Best Defense: Why Elected Courts Should Lead Recusal Reform*, 46 Washburn L.J. 503, 519 (2007) (describing a pervasive

---

[6] We express no opinion as to the correctness of the trial court's rulings. It appears that Appellees have conceded that there is one error in the trial court's judgment and have indicated that they intend to re-file their deficient motion for judgment on the pleadings, should Appellant's motion to alter or amend be partially granted.

bias as one involving "a deep-seated favoritism or antagonism that would make fair judgment impossible" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

So we conclude that Appellant has not met his burden to show that the trial court erred in denying his motion to recuse on this basis. *See also, e.g.*, **In re Samuel P.**, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *6 (Tenn. Ct. App. Aug. 31, 2016) (affirming the trial court's denial of a motion to recuse, despite allegations that the trial court made numerous erroneous rulings against the movant and had made a comment attributing the contentious nature of the proceedings to the movant); **Lowe**, 2016 WL 4909455, at *27–28 (affirming the trial court's denial of a motion to recuse where the trial judge threatened to remove the criminal defendant from the courtroom due to emotional behavior); **McKenzie v. McKenzie**, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *7 (Tenn. Ct. App. Feb. 11, 2014) (affirming the trial judge's denial of a recusal motion even where the trial judge alluded to "the old saying about a lawyer who represents herself" and ruled against the litigant allegedly without authority).

**IV.**

The judgment of the Hamilton County Chancery Court is affirmed, and this cause is remanded to the trial court for further proceedings. Costs of this appeal are taxed to Appellant John Schmeeckle, for which execution may issue if necessary.

s/ J. Steven Stafford<br>
J. STEVEN STAFFORD, JUDGE
